IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| KAREN VAUGHN | § | |
| | § | |
| Vs. | § | CIVIL ACTION NO. 2:04-CV-142 |
| | § | |
| AMERICAN HONDA MOTOR CO., ET AL. | § | |

**MEMORANDUM OPINION AND ORDER**

**1.    Introduction.**

The court grants the parties' motion for approval of the settlement in this consumer class action case. The court certifies the requested class for settlement purposes and finds that the settlement is fair, adequate and reasonable. The court overrules the objections made to the proposed settlement.

**2.    Factual Background and Procedural Posture.**

*A.    The Underlying Lawsuits.*

On April 13, 2004, Karen Vaughn commenced this case. She alleged that Honda violated the Federal Odometer Act and breached the implied warranties of merchantability. Her claim was not that her Honda had more miles on it than the odometer stated. She contended that the odometer in her Odyssey minivan recorded more miles than she had actually driven. Specifically, she contended that the odometers in the 1999 through 2004 Honda Odysseys overstated mileage by 2.5%-4%. She sought certification of a nationwide class of owners and lessees of these Honda vehicles.

Honda defended the suit by filing a motion to dismiss, contending that the Federal Odometer Act did not reach the conduct of manufacturers who designed and installed odometers. Honda also

argued that the plaintiff had not pleaded a sufficient implied warranty claim. Honda's motion to dismiss was denied by this court in March 2005. When the plaintiff amended its class action suit to join Nippon Seiki and New Sabina (the assemblers of the odometers), the court denied similar motions to dismiss made on behalf of those parties.

Sharon McQuiston filed a second class action suit against Honda in June 2006. This suit alleged that the odometers in all 2002-2006 model year Honda and Acura vehicles overstated mileage up to a factor of 3.75%. The plaintiffs sought certification of a nationwide class of owners and leasees of all such new or certified used Honda and Acura vehicles. Honda denied liability in its answer to the McQuiston case. The McQuiston and the Vaughn cases were subsequently consolidated.

The parties to the underlying case are represented by experienced and capable counsel. The plaintiffs are represented in this case by James A. Holmes, R. Stephen Woodfin, David B. Miller, and Jay Kutchka. These attorneys are experienced in class action and complex business litigation. Messrs. Holmes and Woodfin, in particular, have appeared in class action cases in this court on multiple occasions. The Honda defendants are represented by Brian C. Anderson and S. Calvin Capshaw. Both Mr. Anderson and Mr. Capshaw are experienced in class action and complex business litigation. Mr. Anderson, in particular, has handled numerous class actions on behalf of vehicle manufacturers. Nippon Seiki and New Sabina are represented by David B. Johnson, an experienced class action litigator.

    B.    *The Proposed Settlement.*

Prior to the class certification hearing, the parties engaged in extensive discovery. The court held multiple hearings concerning discovery matters. They then proceeded to settlement discussions with the Hon. Robert Faulkner, a retired United States Magistrate Judge. In June 2006, they

executed a term sheet memorializing key terms of a proposed settlement. The settlement proposed to resolve claims involving the 2002-2006 model year Honda and Acura vehicles. As a result of the facts developed during this case, Honda announced that it would change the design tolerance of its odometers from -1.0%–+3.75% to -2.5%–+2.5%. The net effect of that change was that the median tolerance number for the Honda odometer was zero.

The proposed settlement provides significant relief to the class in the form of contractual warranty extension, enhanced legal rights, and global remediation to benefit the class. Honda will provide these benefits to a settlement class of approximately six million automobiles including more than one thousand (1,000) automobiles currently in the overseas service of NATO. Through the settlement, Honda agreed to extend the warranties and lease contracts of all owners and lessees of 2002-2006 Honda and Acuras in the United States by 5%–an amount that exceeds the largest error calculations for any class vehicle. Further, Honda will make complete restitution of otherwise warranted repair charges paid by class members within the 5% of their warranty mileage limitation as well as all lease mileage penalties for the first 5% of excess miles. Moreover, as alluded to above, Honda has agreed to modify its odometer tolerance standards for 2007 and later automobiles. Honda has agreed to pay all costs of the notice and settlement administration, all of the class members' attorneys' fees and all costs. None of these payments will reduce the benefits available to the class.

In consideration of the benefits to the class, the settlement contemplates that the court will issue an order approving the settlement that incorporates a global release of all claims by class members (except those who validly and timely excluded themselves from the settlement class) concerning the accuracy of the odometers in the class vehicles.

**3.     Discussion.**

   *A.     Notice Issues.*

The parties have sought to certify a settlement class and settle the class action at the same time. The court has considered the notice requirements of Fed. R. Civ. P. 23(c)(2) as well as the requirements for settlement and dismissal under Rule 23(e). *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004). For classes certified under Rule 23(b)(3), the law demands "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)(due process requires best notice practicable).

The notice given to absent class members comports with the Federal Rules of Civil Procedure as well as due process. Honda mailed by First Class Mail, postage pre-paid, approximately 5.5 million copies of the court-approved notice to the last-known address of each reasonably identifiable class member. Honda also arranged to have the court-approved notice published in USA Today on November 22, 2006, December 6, 2006, and December 27, 2006. The notice was published on class counsels' website and Honda's website. In addition, the court approved a supplementary mailing of approximately 509,000 copies of the notice to additional class members. In all, Honda gave individual notice in the form approved by this court to approximately 6 million class members.

The timing and the substance of the notice was adequate. *Tankersly v. Gulf Oil Corp.*, 848 F.2d 515, 518 (5th Cir. 1988). Most of the class members received nearly six months notice of the Fairness Hearing. All received ten weeks notice of the Fairness Hearing. The court-approved notice satisfied Rule 23(c)(2) because it contained sufficient information to allow the class members to make an informed choice whether to approve or disapprove of the settlement, object, or opt-out. *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 224 (5th Cir. 1981). Moreover, the

notice advised all of the class members of (1) the effect of the court's final approval order; (2) the rights of class members to exclude themselves or object to the settlement; (3) the general terms of the agreement; (4) the definition of the class; (5) the scope of the release and (6) the amount of attorneys' fees and expenses requested. The notice regarding class counsels' application for attorneys' fees was directed to the class members in a reasonable manner and it complied with Rule 23(h)(1). The court has considered all of the issues relating to notice and finds that the notice requirement is satisfied.

   B. *Certification of Class for Settlement Purposes.*

Next, the court will turn to the issues related to certification. Certification of a settlement class is permissible. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-19 (1997). To determine whether certification is proper, the court must first assess whether the Rule 23(a) prerequisites are satisfied. Then, the court must consider whether certification under Rule 23(b)(3) is proper. Because the case will not be tried, however, the court need not consider issues relating to trial manageability. *See Amchem*, 521 U.S. at 620.

The proposed class, with limited exceptions, is defined as follows:

> All persons who bought or leased in the United States of America (including the District of Columbia, Puerto Rico, and the U.S. Virgin Islands) a model year 2002 through 2006 Honda or Acura automobile or a 2007 Honda Fit ("the Class Vehicles") between April 13, 2002 and November 7, 2006.

The requirements of Rule 23(a) are (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. The proposed class easily meets these prerequisites.

First, the number of class members (approximately 6 million) is such that joinder of all members is impracticable. Thus, the numerosity requirement is satisfied.

Second, there are common questions of law and fact affecting each of the class members.

The threshold for commonality is not high, and it is satisfied when the party opposing the class has engaged in a course of conduct that affects a group of persons. *McNamara v. Bre-X Minerals, Ltd.*, 2003 U.S. Dist. LEXIS 25641, *24-26 (E.D.Tex. 2003). Here, the plaintiffs alleged the existence of an identical product defect in the vehicles and a common scheme to defraud customers. Each class member's claim is governed by a federal statute, and the measure of actual damages and/or statutory penalties is the same for all class members under this statute. All of the class members' claims rest on the same alleged violations of the Federal Odometer Act.

Third, the claims of the class representatives are typical of those raised by the class members. The typicality requirement focuses on the "similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen v. Treasure Chest Casino., L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999) (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir.1997)). Here, the named plaintiffs' legal and remedial theories are the same as those of the class as a whole. The typicality requirement is satisfied.

Finally, the court considers the adequacy of representation. "Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). The rule requires that there be no conflict or antagonism between the interests of the representative plaintiffs and the other class members. Moreover, the class representatives must possess a sufficient level of knowledge and understanding to be capable of controlling or prosecuting the litigation. *Feder v. Electronic Data Systems Corp.*, 429 F.3d 125 (5th Cir. 2005). Applying these principles, the court finds that the named representatives are adequate. The representative have been engaged in the prosecution of the case and have demonstrated their dedication to the interests of the class. No conflict or antagonism exists between the class and its representatives. Finally, the class counsel in this case are of the

highest quality, and are experienced class action litigators. They have appeared numerous times in this court in other class action cases. The adequacy requirement is satisfied.

The court now turns to the requirements of Rule 23(b)(3). First, the court considers whether common questions of law and fact predominate over individual issues. Predominance examines whether "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. In *Amchem*, the Court noted that "predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.* at 625. Here, the record indicates that the predominance test is satisfied. All of the plaintiffs' claims arise out of a single course of conduct. The crux of the case is that odometers in Honda and Acura vehicles overstate mileage. This defect is allegedly found in the odometers of all class vehicles. The plaintiffs' primary cause of action is the Federal Odometer Act. In a national class action, the presence of a federal statute avoids any problems as to predominance raised by divergent state laws. Because there has been a settlement, the case will not have to be tried; however, the remedies available to the plaintiffs in this case provide a fair and manageable means for compensating the absent class members. The settlement class is sufficiently cohesive that absent class members may be fairly bound by the decisions of the representative parties. *Amchem*, 521 U.S. at 621. The case satisfies the predominance requirement.

Under Rule 23(b)(2), the class action device must provide a superior means for adjudicating the class's claims. Class actions are superior when individual suits would be wasteful, duplicative, present managerial difficulty, and would be adverse to judicial economy. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999). This case meets this requirement. It would be cost prohibitive to require each individual class member to litigate his claim in this case. Moreover, given the large number of potential claims, judicial economy is served by the class action device.

The court need not consider any questions relating to the manageability of the class at trial, given that the court is considering a settlement class. *Amchem*, 521 U.S. at 620. The court is satisfied that the Rule 23(b)(3) considerations are met in this case.

      C.      *Evaluation of the Fairness of the Settlement.*

The court has found that the class is properly certifiable for settlement purposes. Now, the court will examine the fairness of the proposed settlement. The court applies heightened scrutiny to this case, because the case was certified for settlement purposes. Rule 23(e) provides that a court should approve a settlement if it is fair, reasonable, and adequate, and consistent with the public interest. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). The court will consider the following factors: (1) the plaintiffs' likelihood of success on the merits, weighed against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the state of proceedings and the amount of discovery completed; (4) the nature of settlement negotiations; (5) the judgment of experienced counsel; (6) and objections raised by members of the class. *Newby*, 394 F.3d at 301. The court also considers the public interest in favor of settlement of class action lawsuits. *Cotton*, 559 F.2d at 1331.

The most important factor is the probability of the plaintiffs' success on the merits. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). Review of the circumstances in this case demonstrates that the monetary benefit and the extensions of the warranty and lease periods far outweigh the plaintiffs' uncertain prospects of success were the case fully litigated. In reaching this decision, the court finds that the proposed settlement value to the class is approximately $244 million that will be distributed to the class in the form of lease refunds, lease extensions, warranty extensions, and out-of-pocket reimbursement for warranty repairs that should have been covered by warranties that had prematurely expired.

The court has carefully considered the benefits to be conferred on the class. First, Honda has agreed to extend the mileage limitations of all manufacturer's and Honda extended warranty contracts by 5%. Among other things, this extension applies without any action on the part of any class member. It is transferable to subsequent purchasers to the same extent as the underlying warranty. Second, if a class member has paid for repairs during the extended mileage periods, he or she is entitled to a refund of 100% of the documented repair cost. This is significant. Plaintiffs' theory in this case, in part, relied on the fact that Honda calibrated its odometers to overstate mileage to avoid paying warranty repairs which otherwise would have been covered. The extended warranty provision of the settlement recovers for the class the benefit allegedly disgorged from the class by Honda's challenged conduct. The claims forms and dispute resolution procedures, moreover, are fair and reasonable.

With respect to leases, Honda has agreed to extend all current leases through American Honda Finance Corporation ("AHFC") by 5%. Leases will be extended automatically. Moreover, if a class member has made excess mileage charges to AHFC on the lease of a class vehicle, he or she will receive an automatic refund of those charges attributable to the first 5% of those excess miles. If a class member leased a vehicle from an entity unaffiliated with AHFC, then the class member will receive the same type of refund for excess miles, upon the submission of supporting proof. Finally, Honda has agreed to re-engineer every Honda and Acura vehicle in the world beginning with the 2007 model year to eliminate over-registration of miles by the odometer.

These benefits are estimated to cost Honda approximately $115 million. If purchased on the open market, the plaintiffs' expert has testified that the total value of these benefits would be approximately $244 million. The consideration was agreed upon after months of extensive negotiation between the parties. The defendants presented substantial defenses, and the plaintiffs'

success on the merits was highly uncertain. The theory of liability was novel, and the plaintiffs would have had to prove intent to defraud under the Federal Odometer Act. Likewise, they would have had to apply the statute to a manufacturer's decision to select a particular odometer and set its tolerance. Finally, they would have had to prove that the software code used in the odometer was a "device" within the meaning of the statute. The consideration paid in the settlement was not the result of fraud or collusion, and these experienced counsel struck a compromise that provided immediate and automatic benefits to the class. The settlement is well within the range of reasonableness.

The court next considers the factors relating to the complexity, expense, and likely duration of the case, as well as the state of the proceedings and the discovery conducted. These factors weigh in favor of approval. The legal issues in this case were novel and the class proceedings, complex. Litigation of this type is expensive and time consuming. Class certification proceedings and interlocutory appeals would have delayed benefit to the class. In addition, class counsel conducted an extensive investigation into the facts of the case and conducted a large amount of discovery into the underlying facts and Honda's defenses. Class counsel hired experts and deposed a number of Honda's personnel. The court finds that class counsel had a full appreciation for the merits of the case.

The nature of the negotiations and the opinions of counsel weigh in favor of approval. The settlement in this case resulted from arm's length negotiations. There was no bias, collusion, or coercion in favor of any party or group of class members. This fact weighs heavily in favor of approval. In addition, the parties negotiated the relief to the class separately from, and before, entering negotiations over attorneys' fees. The parties employed sophisticated counsel, and their negotiations resulted in a settlement that is fair to all of the class members and does not unjustly

benefit any group of class members. The counsel for the parties in this case are experienced in class action litigations, and their opinion that the settlement should be approved and is fair to the class is entitled to weight.

The court has also considered the opinions of absent class members. As of August 1, 2007, from the over 6 million notices sent to class members, only 2,895 timely requests for exclusion were submitted. The extremely small number of opt-outs suggests a favorable opinion by the absent class members. Furthermore, a total of only 82 objections (timely or otherwise) were filed. Many of those were withdrawn following the Fairness Hearing or after reviewing the briefs in support of the settlement. Of these objections, approximately one third of the people who lodged objections did so because they thought the case was frivolous and the consideration paid by Honda was too much, rather than too little. Although the court will address specific objections in the next section of this opinion, it is noteworthy that so few were filed, in light of the massive size of the class and the notice given to the absent class members. All evidence considered, the court finds that the settlement is fair, reasonable, and adequate. It is also consistent with the public interest.

      D.     *Consideration of Objections.*

The court will now consider the objections that were filed to the settlement. First, the court overrules all objections that were made by persons who are not members of the proposed class. Persons who are not members of the certified class have no legally protected interest in the settlement and have no standing to object. These objectors include Charles Beuerlein (claim for damages unrelated to facts of this case); Kenneth J. Cooke (owner of a 2001 Honda Accord not covered by class period); and Sol Rosen (claim for damages for allegations unrelated to this case).

Second, the court overrules the objections made by those who failed to include the specified proof that they have bought or leased a class vehicle. The court's Preliminary Approval Order

required such proof. These objectors include: Randi Laine Anderson, George Ankrum, Stephen Barilovits, Art Barrett, Charles Beuerlein, Joseph Bevilacqua, Ronald Bouwman, McConnell Coakwell, Norman Dreyfuss, Lisa Eastwood, James T. Feilder, Sundeep Grewel, Cecil Hinsey, Jesus Ituarte, James Lloyd, Rhoda Ludwig, Charles Matthews, Eric Newman, Ketan Patel, Irene Payne, Scott Phillips, Lorna Rich, Jerry Richie, Vincent Rivera, Patrica Rockstroh, Richard Romig, Sol Rosen, Daniel Steckel, Yvonne Totten, John Warrington, Susan Weis, and an unknown objector from Ft. Wayne, Indiana.

Third, the court overrules all objections that were filed by class members who did not include a list of all cases in which the objector or his counsel have appeared as class action settlement objectors in the past five years, as required by the Preliminary Approval Order. These include: Randi Anderson, Celia Andriello, George Ankrum, Stephen Barilovits, Art Barrett, Marcelle Barrett, Irving Bergin, Charles Beuerlein, Ronald Bouwman, Darlyne Cange, McConnell Coakwell, Kenneth Cooke, Brian Davidson, Norman Dreyfuss, Rick Drollinger, Lisa Eastwood, Ahmed Elsayem, Martha Fleischer, Greg Giles, Lauri Goldman, Cecil Hinsey, Jesus Ituarte, Ronald Kubalski, James Lloyd, Rhoda Ludwig, Charles Matthews, Niloufar Mobashery, Eric Newman, Ketan Patel, Francine Peterman, Scott Phillips, Lorna Rich, Jerry Richter, Leslie Richter, Vincent Rivera, Patricia Rockstroh, Richard Romig, Sol Rosen, Paul Sevougian, Paul Sobolik, Daniel Steckel, Robert Shaffer Delma Studdard, Thomas Sullivan, Yvonne Totten, Jennifer Tupiak, Mary Wakeman, Mark Weaver, and Susan Weis, and an unknown objector from Ft. Wayne, Indiana.

Finally, the court considers the merits of the objections. Putting aside the individuals who are procedurally barred from objecting, there are only two objections to the settlement that deserve any substantive discussion. First, some objectors (for example Zach Hawthorn and Dale Robinson) complain that the settlement does not provide more relief to the class members. Primarily, these

objectors complain that the settlement does not compensate for "diminution in value" claims suffered as a result of having a defective odometer (and a vehicle that has correspondingly fewer miles than what its odometer represents). A claim that a class should have gotten more is easy to make, but the test of a settlement's fairness is whether it reflects a reasonable compromise of the claims asserted. *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 463-64 (2d Cir. 1982). The court agrees with the settling parties that the vast majority of class members who perceive they have this claim would have a difficult time establishing any claim for diminution in value. Moreover, class counsel and Honda could reasonably have determined that a reasonable settlement would provide enhanced warranty benefits and increased monetary compensation for those class members who had actually suffered a concrete, out-of-pocket loss. In other words, it was not unreasonable for class counsel to focus their efforts on obtaining monetary benefits for class members who had actually suffered out-of-pocket costs in repair charges that will be refunded under the settlement. Likewise, it was not unreasonable for class counsel to determine that lessees stand on different footing from owners. The lessee who was charged for excess mileage, unlike an owner who suffered an amorhpous "diminution in value" claim, suffered a readily ascertainable out-of-pocket loss. As a result, the court determines that the settlement does not unfairly benefit lessees over owners, nor does it fail to appropriately compensate owners for diminution in value. In doing so, the court observes that plaintiffs in diminution in value cases have faced significant hurdles when attempting to prove such claims. *Briehl v. General Motors Corp.*, 172 F.3d 623, 627-29 (7th Cir. 1999); *Martin v. Ford Motor Co.*, 914 F. Supp. 1449, 1455 n.7 (S.D. Tex. 1996). It does not make the settlement unfair or unreasonable that the class has to release speculative claims for diminution in value.

Some of the objectors complain that they will have to disclose to future buyers the fact that

their odometer records mileage inaccurately. The Federal Odometer Act, however, requires disclosure only when the owner knows that the odometer has been tampered with or replaced, such that the mileage reading depicted falls outside "the designed tolerance of the manufacturer of the odometer." 49 U.S.C. § 32703(1). Likewise, the applicable regulations require disclosure when the odometer reading differs from the actual mileage and the difference is greater than that caused by calibration error. 29 C.F.R. § 580.5(e)(3). In any event, the court has determined that it will issue a declaratory judgment in connection with the dismissal of this case to the effect that the allegations in this case do not confer upon settlement class members an obligation to make the required written disclosures (in the absence of specific knowledge of odometer tampering). In light of this decision, the court understands that the parties who raised this objection have withdrawn it.

The court has overruled all of the objections to the settlement. It is fair, reasonable, and adequate. The lawsuit was a catalyst in Honda's decision to change its design specifications, and the settlement in this case is in the public's interest. The court therefore approves the settlement with the enhancements contained in the court's final approval order.

  E. *Attorneys' Fees.*

The court now addresses an appropriate amount to award as attorneys' fees. Class counsel seeks an award of $9,500,000 in fees and a reimbursement of $298,829.35 in litigation expenses. Class counsel has agreed to compensate various objectors and their counsel from any attorneys' fees awarded by the court. The objectors compensated by these fees asserted there were certain shortcomings in the settlement. The plaintiffs and Honda have agreed to certain enhancements to the agreement in response to these contentions. The total amount of fees to be paid to the objectors is at least $730,000 and could be as much as $880,000.

In calculating an appropriate loadstar factor, the court multiplies the number of hours

reasonably expended by a reasonable hourly rate. *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 192 (5th Cir.1999).  Based on the evidence, the court finds that the 12,018.70 hours class counsel has expended since July of 2003 is reasonable.  The court further finds that a reasonable hourly rate of $350 per hour is appropriate in this case.  This results in a lodestar of $4,206,545.

Whether the lodestar should be adjusted upward or downward depends on the circumstances of the case and the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).  The twelve factors are:  (1) the time and labor required to litigate the matter; (2) the novelty and complicatedness of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case imposed time constraints; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) whether the case was "undesirable"; (11) the type of attorney-client relationship and whether the relationship was long-standing; and (12) awards made in similar cases.  *Id.* at 717-19.

The proposed settlement provides for class members receiving lease and warranty extensions of 5%, when the alleged average odometer error was 2.5%.  These extensions provide relief beyond that which could have been obtained at trial, notwithstanding the uncertainty of whether or not the class would have prevailed.  The defendant has, and would presumably continue, to vigorously deny liability.  As a result, the degree of success the class enjoys by way of this settlement weighs in favor of an upward adjustment to the loadstar.  The court relies heavily on the opinion of Professor Charles Silver, a renowned expert in this area of the law.

In addition, class counsel invested nearly 5 years investigating, litigating, and negotiating the settlement on behalf of a 6 million member class.  The alleged violations of the Federal Odometer Act presented complex and novel issues compounding the time and labor required by class counsel.

Case 2:04-cv-00142-TJW  Document 290  Filed 09/28/07  Page 16 of 17 PageID #: 4040

And by taking this case on a contingency basis, class counsel assumed a significant risk of receiving no compensation at all. As a whole, these factors further support an upward adjustment of the loadstar.

To the extent that any *Johnson* factors were subsumed in the lodestar, the court did not reconsider them when determining whether any adjustment to the lodestar was required. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir.1998).

In light of these factors, the court is of the opinion that it is reasonable that the lodestar of $4,206,545 be adjusted upward to the $9,500,000 request. The court therefore applies a multiplier of 2.26 to the loadstar, and approves the award of $9,500,000 in attorneys' fees and reimbursement of $298,829.35 in litigation expenses.

F. Bond.

Class counsel requests that this court require any objector filing a notice of appeal to post a bond. The court agrees that the detrimental impact of an appeal as to the entire class renders it appropriate for the court to require any objector to post an appeal bond. *See* Fed. R. App. P. 7 ("[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal"). It bears mention that Honda stands ready to deliver approximately $10 million in lease refunds to class members. Also, the court is of the opinion that the amount of bond should reflect the significant possibility that any objector's appeal will be subject to Fed. R. App. P. 38.[1] *See Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987) (holding that it is proper for a district court to considered the possibility that an appeal may result in the award of attorneys' fees in determining the appeal bond amount); and *Allapattah Servs.,*

---

[1] The court notes that considering a potential award of attorneys' fees for purposes of an appeal bond is an issue of first impression for the Fifth Circuit.

*Inc. v. Exxon Corp.*, 2006 WL 1132371, *17 (S.D.Fla. 2006) (requiring appeal bond if an objector appeals on behalf of the entire class).

Therefore, this court requires that any objector who notices an appeal of this Order shall, within seven (7) days after such notice, deposit a cashier's check in the amount of one-hundred and fifty-thousand dollars ($150,000) with the Clerk of the United States District Court in Marshall, Texas for deposit into the Registry of the Court. Alternatively, the appealing objector may post a surety bond in the same amount. The cash or bond will remain on deposit until further Order of the Court.

**4.     Conclusion.**

For the reasons set forth in this Order, the court finds:

(1)    that the class is properly certifiable for settlement purposes;

(2)    that the settlement is fair, reasonable, adequate, and consistent with the public interest. Therefore, the proposed settlement is APPROVED;

(3)    that class counsels' requested attorneys' fees of $9,500,000 plus $298,829.35 in litigation expenses are reasonable; and

(4)    that a $150,000 appeal bond is appropriate in this case.

It is so ORDERED.

SIGNED this 28th day of September, 2007.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE